IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA
ex rel. SOUTHEASTERN
CARPENTERS REGIONAL
COUNCIL, and LUIS ALBERTO
BORJA, Jr.,

        Plaintiffs,

        v.

FULTON COUNTY, GEORGIA,
SOCO CONTRACTING
COMPANY, INC., CUSTOM
INTERIORS & ACOUSTICS, LLC,
and SAUCEDOS DRYWALL, LLC,

        Defendants.

1:14-cv-4071-WSD

## OPINION AND ORDER

This matter is before the Court on Defendant SoCo Contracting Company, Inc.'s ("SoCo") 12(b)(6) Motion to Dismiss Plaintiffs-Relators' Complaint [24] ("Motion to Dismiss"), SoCo's 12(b)(6) Motion to Dismiss Defendant and Crossclaim Plaintiff Custom Interiors and Acoustics, LLC's Crossclaim [25] ("Motion to Dismiss Custom Interiors' Cross-Claim"), and Plaintiffs-Relators Southeastern Carpenters Regional Council and Luis Alberto Borja, Jr.'s ("Relators") Motion for Leave to File First Amended Complaint [30] ("Motion to

Amend").[1]

# I.      BACKGROUND

### A.      Facts

Defendant Fulton County, Georgia ("Fulton County") received federal funding to construct the Fulton County Aviation Community Cultural Center ("ACCC").  (Compl. ¶¶ 13-14).  SoCo entered into a contract ("Contract") with Fulton County to serve as general contractor for the construction.  (Compl. ¶ 16). The Contract required SoCo and any subcontractors to comply with the Davis-Bacon and Related Acts (DBRA"), 40 U.S.C. § 3141 *et seq.*, which requires contractors to pay minimum prevailing rates to their workers, to each week provide payroll statements to the government, and to certify weekly that their payroll statements are accurate and complete and that their workers were paid at prevailing rates.  (Compl. ¶¶ 17-19, 23); 29 C.F.R. § 5.5.  Relators allege that each Defendant

---

[1]      This is a *qui tam* action, which "permits a[] private individual, known as a relator, to bring an action on their own and the government's behalf.  The complaint is first filed under seal to allow the government time to investigate and intervene.  If the government declines to intervene, the relator may continue with the action and if successful, may recover between 25 and 30 percent of the judgment or settlement, plus reasonable expenses, attorney fees, and costs."  U.S. ex rel. Matheny v. Medco Health Sols., Inc., 671 F.3d 1217, 1220 n.2 (11th Cir. 2012) (internal citations omitted).

"owed a non-delegable duty to all workers on the ACCC project to ensure they were paid the prevailing wages."  (Compl. ¶¶ 21-22; <u>see</u> [30.1] ¶¶ 21-22, 24-25).

SoCo hired Defendant Custom Interiors & Acoustics, LLC ("Custom Interiors") as a subcontractor for drywall work on the project, and Custom Interiors contracted with Defendant Saucedos Drywall, LLC ("Saucedos") to provide labor for the work.  (Compl. ¶¶ 24-25).  In late February 2014, Saucedos hired Plaintiff-Relator Luis Alberto Borja, Jr. ("Borja") to work on the ACCA project. (Compl. ¶ 26).  In his first work week, Borja received $133.33 for fifty-six (56) hours of work, well below the prevailing hourly rate of $29.30, required by the DBRA, for drywall work.  (Compl. ¶¶ 20, 27, 31).  In his second week, Borja worked forty (40) hours but received no pay.  (Compl. ¶ 32).  When Borja inquired about his compensation, Saucedos terminated his employment "for being too slow."  (Compl. ¶ 32).

Relators "believe[]" that, of the approximately ten (10) drywall workers involved in the ACCC project during Borja's two (2) week employment, none were paid at prevailing rates.  (Compl. ¶ 34).  Relators also allege, on information and belief, that "Defendants' scheme of paying non-prevailing wages and benefits pre- and post-dated Borja's time working on the project and extended to workers other than Borja."  (Compl. ¶ 34).  Relators allege further that "Saucedos made no

3

certifications to the government that it was paying prevailing DBRA wages and none of the certifications submitted by other contractors included any Saucedo workers." (Compl ¶ 36; see id. ¶ 29). Fulton County, SoCo, and Custom Interiors "made no efforts to ensure that DBRA requirements were being complied with by Saucedos . . . . As a result, those Defendants made false certifications to the federal government . . . that they were paying the prevailing DBRA wages to workers, including Saucedo's subcontracted workers." (Compl. ¶ 37).

B.    Procedural History

On December 23, 2014, Relators filed their Complaint [1], asserting three (3) counts under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. In Count 1, Relators allege that, in violation of 31 U.S.C. § 3729(a)(1), Defendants knowingly presented to the government fraudulent claims for payment ("Presentment Claim"), knowingly made or used false statements to get fraudulent claims paid ("Make-or-Use Claim"), and knowingly made false statements to avoid an obligation to pay the government ("Reverse False Claim").[2]

---

[2]    31 U.S.C. § 3729(a)(1)(G) "is known as the 'reverse false claim' provision of the FCA because liability results from avoiding the payment of money due to the government, as opposed to submitting to the government a false claim." Matheny, 671 F.3d at 1222.

(Compl. ¶¶ 41-44).[3]  Count 2 asserts that, in violation of 31 U.S.C. § 3729 and

31 U.S.C. § 3801 *et seq.*, Defendants "fraudulently certified its [sic] payrolls to the

Government and/or failed to provide certifications at all."  (Compl. ¶¶ 45-48).[4]

Count 3 asserts that, in violation of 31 U.S.C. § 3729(a)(1)(C), Defendants

"conspired to defraud the Government by getting false or fraudulent claims

allowed or paid."  (Compl. ¶¶ 49-52).  Relators do not assert a claim under the

DBRA.  ([29] at 7).

On September 14, 2015, the United States elected not to intervene in this

action.  ([9]).  On November 25, 2015, Fulton County filed its answer to Relators'

Complaint and cross-claimed against SoCo, Custom Interiors, and Saucedos.

([17]).  On December 4, 2015, Custom Interiors filed its answer to Relators'

Complaint and Fulton County's cross-claim, and itself cross-claimed against SoCo

and Saucedos.  ([18]).  On December 16, 2015, SoCo filed its answer to Fulton

County's cross-claim.  ([23]).

On December 21, 2015, SoCo filed its Motion to Dismiss Relators'

---

[3]     The claims in Count 1 involve "distinct theories of liability with different elements, so their inclusion in a single count violates Rule 10(b) [of the Federal Rules of Civil Procedure]."  United States ex rel. Creighton v. Beauty Basics Inc, No. 2:13-cv-1989, 2016 WL 2642740, at *2 (N.D. Ala. May 10, 2016).

[4]     Relators do not identify the subsection on which Count 2 is based.  The Court treats Count 2 as asserting a Presentment or Make-or-Use Claim.

Complaint, arguing that Relators fail to plead their claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") and that Count 2 improperly seeks an administrative remedy and is duplicative of Count 1.  On December 28, 2015, SoCo filed its Motion to Dismiss Custom Interiors' Cross-Claim, seeking dismissal of Custom Interiors' cross-claim against SoCo.

On January 26, 2016, Relators filed their Motion to Amend, seeking leave to amend their Complaint and attaching their proposed First Amended Complaint ("Proposed Amended Complaint").  The Proposed Amended Complaint does not allege that Defendants violated 31 U.S.C. § 3729(a)(1)(G) or 31 U.S.C. § 3801 *et seq.*, and asserts Count 3 only against Custom Interiors and Saucedos. ([30.1] ¶¶ 42, 48, 49-52).  Also on January 26, 2016, Relators filed their Response in Opposition to Defendant SoCo Contracting Company, Inc.'s Motion to Dismiss the Complaint [29] ("Response").  In it, Relators cite to their Proposed Amended Complaint rather than the operative Complaint against which SoCo filed its Motion to Dismiss.  ([29] at 5 n.2).  Relators argue that their Proposed Amended Complaint, not their operative Complaint, satisfies the pleading requirements of Rule 9(b).  ([29] at 5).

On February 8, 2016, Custom Interiors and SoCo filed their Joint Stipulation

of Dismissal of Custom Interiors & Acoustics, LLC's Crossclaim against SoCo Contracting Company, Inc. [33], in which Custom Interiors' cross-claim against SoCo was voluntarily dismissed.  On February 12, 2016, SoCo filed its Reply Brief in Support of Motion to Dismiss Relators' Complaint [34] ("Reply").  In it, SoCo argues that, because Relators base their Response on their Proposed Amended Complaint, SoCo's Motion to Dismiss should be deemed unopposed.  Also on February 12, 2016, SoCo filed its Response Brief in Opposition to Relators' Motion for Leave to File First Amended Complaint [35].  In it, SoCo argues that Relators' Proposed Amended Complaint fails to satisfy the pleading requirements of Rule 9(b) and that Relators' Motion to Amend should be denied as futile. Relators did not file a reply.

The Court agrees with SoCo that, because Relators base their Response entirely on their Proposed Amendment Complaint, SoCo's Motion to Dismiss the original complaint should be deemed unopposed and, as a result, it is granted.  See Gudenavichene v. Mort. Elec. Registration Sys., Inc., No. 2:12-cv-82, 2012 WL 1142868, at *2 (D. Nev. Apr. 4, 2012) (deeming unopposed a motion to dismiss where plaintiff's opposition was based on a proposed but inoperative amended complaint); cf. L.R. 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").

7

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss for Failure to State a Claim

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the court must "assume that the factual allegations in the

complaint are true and give the plaintiff[] the benefit of reasonable factual

inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir.

2010).  Although reasonable inferences are made in the plaintiff's favor,

"'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte

Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water

Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).  The Court is

not required to accept as true conclusory allegations or legal conclusions.  See

Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010)

(construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly,

550 U.S. 544 (2007)); see Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263

(11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or

legal conclusions masquerading as facts will not prevent dismissal."  (quoting

Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)

(internal quotation marks omitted))).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Mere "labels and conclusions" are insufficient. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  This requires more than the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679).  The well-pled allegations must "nudge[] [plaintiff's] claims across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

B.    Motion for Leave to File an Amended Complaint

Rule 15(a) of the Federal Rules of Civil Procedure allows a plaintiff to file one amended complaint, as a matter of course, if the amended complaint is filed within 21 days of service of the original complaint or within 21 days of the defendant's filing of a responsive pleading or Rule 12 motion to dismiss.  See Fed. R. Civ. P. 15(a)(1).  Amended complaints may be filed outside of these time limits

only "with the opposing party's written consent or the court's leave."  See Fed. R. Civ. P. 15(a)(2).

Rule 15 of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "There must be a substantial reason to deny a motion to amend." Laurie v. Alabama Court of Criminal Appeals, 256 F.3d 1266, 1274 (11th Cir. 2001).  "Substantial reasons justifying a denial include 'undue delay, bad faith, dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'"  Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

"A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss."  Christman v. Walsh, 416 Fed. App'x 841, 844 (11th Cir. 2011); Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'" (quoting Halliburton & Assoc., Inc. v. Henderson, Few & Co., 774 F.2d 441, 444 (11th Cir. 1985))); Bazemore v. U.S. Bank, N.A., No. 1:14-cv-3310, 2016 WL 889676, at *5 (N.D. Ga. Mar. 8, 2016) ("Futility means that the amended complaint would fail to state a

claim upon which relief could be granted.  Thus, the same standard of legal

sufficiency as applied under a motion to dismiss for failure to state a claim

pursuant to Rule 12(b)(6) is used to determine futility." (internal citation omitted));

Bill Salter Adver., Inc. v. City of Brewton, AL, 2007 WL 2409819, at *2 (S.D.

Ala. Aug.23, 2007) ("The futility threshold is akin to that for a motion to dismiss;

thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the

amendment is futile and leave to amend is properly denied.").

## III.  DISCUSSION

### A.    The FCA

The FCA permits private parties to file a *qui tam* action against any person

who:

> (A)  knowingly presents, or causes to be presented, a false or
>      fraudulent claim for payment or approval;
>
> (B)  knowingly makes, uses, or causes to be made or used, a false
>      record or statement material to a false or fraudulent claim;
>
> (C)  conspires to commit a violation of subparagraph (A), (B), (D),
>      (E), (F), or (G);
>
> . . .
>
> (G)  knowingly makes, uses, or causes to be made or used, a false
>      record or statement material to an obligation to pay or transmit
>      money or property to the Government, or knowingly conceals or
>      knowingly and improperly avoids or decreases an obligation to
>      pay or transmit money or property to the Government.

31 U.S.C. §§ 3729(a)(1)(A)-(C), (G).[5]  The purpose of these provisions "is to

encourage private individuals who are aware of fraud being perpetrated against the

government to bring such information forward."   Ragsdale v. Rubbermaid, Inc.,

193 F.3d 1235, 1237 n. 1 (11th Cir.1999).

    Because "the False Claims Act is a fraud statute for the purposes of Rule

9(b)," U. S. ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1309-10

(11th Cir. 2002), FCA plaintiffs must allege "with particularity the circumstances

constituting fraud," Fed. R. Civ. P. 9(b).  "Failure to satisfy Rule 9(b) is a ground

for dismissal of a complaint."  Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th

Cir. 2005).

---

[5]    In 2009, Congress amended and renumbered these provisions via the Fraud
Enforcement and Recovery Act of 2009, Pub. L. No. 111–21, 123 Stat. 1617.  The
pre-amendment version of 31 U.S.C. § 3729(a)(1)(A) prohibited persons from
"knowingly present[ing], or caus[ing] to be presented, to an officer or employee of
the United States Government or a member of the Armed Forces of the United
States a false or fraudulent claim for payment or approval."  31 U.S.C.
§ 3729(a)(1) (2006).  The pre-amendment version of 31 U.S.C. § 3729(a)(1)(B)
prohibited persons from "knowingly mak[ing], us[ing], or caus[ing] to be made or
used, a false record or statement to get a false or fraudulent claim paid or approved
by the Government."  31 U.S.C. § 3729(a)(2) (2006).  The pre-amendment version
of 31 U.S.C. § 3729(a)(1)(C) attached civil liability to "any person who conspires
to defraud the Government by getting a false or fraudulent claim allowed or paid."
31 U.S.C. § 3729(a)(3) (2006).  The pre-amendment version of 31 U.S.C.
§ 3729(a)(1)(G) prohibited persons from "knowingly mak[ing], us[ing], or
caus[ing] to be made or used, a false record or statement to conceal, avoid, or
decrease an obligation to pay or transmit money or property to the Government."
31 U.S.C. § 3729(a)(7) (2006).

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what
> statements were made in what documents or oral representations or
> what omissions were made, and (2) the time and place of each
> statement and the person responsible for making (or, in the case of
> omissions, not making) same, and (3) the content of such statements
> and the manner in which they misled the plaintiff, and (4) what the
> defendants obtained as a consequence of the fraud.

Clausen, 290 F.3d at 1310 (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194,

1202 (11th Cir. 2001)); United States v. Beauty Basics Inc, No. 2:13-cv-1989,

2016 WL 3519365, at *2 (N.D. Ala. June 28, 2016) ("[T]he complaint must

describe the who, what, when, where, and how of each element of a fraud claim,

except scienter.").

To plead an FCA claim with the particularity required by Rule 9(b), a

plaintiff must "plead 'facts as to time, place, and substance of the defendants'

alleged fraud, specifically, the details of the defendants' allegedly fraudulent acts,

when they occurred, and who engaged in them.'" U.S. ex rel.

Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1302 (11th Cir. 2010) (quoting

Clausen, 290 F.3d at 1310).  This heightened pleading standard "serves the dual

purposes of 'alerting defendants to the precise misconduct with which they are

charged and protecting defendants against spurious charges of immoral and

fraudulent behavior.'" Cade v. Progressive Cmty. Healthcare, Inc., No. 1:09-cv-

3522, 2011 WL 2837648, at *3 (N.D. Ga. July 14, 2011) (quoting Clausen, 290

F.3d at 1310).  The Rule 9(b) requirements are "necessary" but, "in practice, make it difficult for a *qui tam* plaintiff to bring an action."  U.S. ex rel. Keeler v. Eisai, Inc., 568 F. App'x 783, 793 (11th Cir. 2014).

      B.       Relators' Presentment Claim

            1.       Background

To plead a Presentment Claim under 31 U.S.C. § 3729(a)(1)(A), a relator must establish three elements:  "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." United States ex rel. Walker v. R & F Properties of Lake County, Inc., 433 F.3d 1349, 1355 (11th Cir. 2005).[6]

A claim is false or fraudulent where it is accompanied by "[a] misrepresentation about compliance with a statutory, regulatory, or contractual requirement . . . material to the Government's payment decision."  Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 1996 (2016).  The misrepresentation may be express or implied.  United States ex rel.

---

[6]     "Although *R&F Properties*, decided in 2005, predates the 2009 amendment to the False Claims Act, the elements of a direct false claim submitted to a government officer were unchanged by that amendment."  Creighton, 2016 WL 2642740, at *2.

<u>Saldivar v. Fresenius Med. Care Holdings, Inc.</u>, 145 F. Supp. 3d 1220, 1256 (N.D. Ga. 2015).  It is express where the claimant "certifie[s] compliance with applicable laws and regulations as part of the claims submission process."  <u>Id.</u> (quoting <u>United States ex rel Phalp v. Lincare Holdings, Inc.</u>, 116 F. Supp. 3d 1326, 1345 (S.D. Fla. 2015)) (internal quotation marks omitted).  It is implied where "at least two conditions are satisfied:  first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths."  <u>Universal Health</u>, 136 S. Ct. at 2001.  The misrepresentation, whether express or implied, "must be material to the other party's course of action."  <u>Id.</u>

     "The act of submitting a fraudulent claim to the government is the *sine qua non* of '" a 31 U.S.C. § 3729(a)(1)(A) violation.  <u>Corsello</u>, 428 F.3d at 1012.[7]  Liability under this provision "arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies."  <u>Id.</u>; <u>see id.</u> at 1014 ("Underlying improper

---

[7]     After the 2009 amendment, liability also may attach where the claim was submitted not directly to the government but to a third party with a defined government nexus.  <u>See</u> 31 U.S.C. § 3729(a)(1)(A); 31 U.S.C. § 3729(b)(2).  This expansion is irrelevant here because Relators appear to allege that Defendants submitted claims directly to the government.  (Compl. ¶¶ 42, 46-47, 51).

practices alone are insufficient to state a claim under the False Claims Act absent allegations that a specific fraudulent claim was in fact submitted to the government.").  A "claim" is "any request . . . for money or property" presented to the government or to a third party using the money or property in behalf, and at the expense, of the government.  31 U.S.C. § 3729(b)(2).  "Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the circumstances constituting fraud or mistake that must be pled with particularity pursuant to Rule 9(b)."  <u>Keeler</u>, 568 F. App'x at 793 (quoting <u>United States ex. rel. Karvelas v. Melrose–Wakefield Hosp.</u>, 360 F.3d 220, 232 (1st Cir. 2004)) (internal quotation marks omitted); <u>United States et al., ex rel. John Doe v. Health First, Inc., et al.</u>, No. 614-cv-501, 2016 WL 3959343, at *4 (M.D. Fla. July 22, 2016) ("The Eleventh Circuit requires that qui tam relators meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) as to every element of their FCA claims.").

The Complaint alleges that Fulton County, SoCo, and Custom Interiors certified falsely that they paid workers in compliance with the DBRA.  (Compl. ¶¶ 2-3, 23, 29, 36-37).  The Complaint also alleges that, in violation of the DBRA, Saucedos underpaid its workers and failed to submit any payroll certifications to the government.  (Compl. ¶¶ 34, 36).  The other Defendants allegedly "made no

16

efforts to ensure" that Saucedos complied with the DBRA.  (Compl. ¶ 37).  The

Complaint alleges further that, in violation of the DBRA, Fulton County, SoCo,

and Custom Interiors failed to include Saucedeos workers on their payroll

certifications.  (Compl. ¶¶ 29, 36).  Although Relators do not clearly explain the

theory on which these allegations constitute a Presentment Claim against each

Defendant,[8] Relators appear to assert that Defendants violated the DBRA in the

ways described above and then—either expressly or impliedly—falsely certified

their compliance with the DBRA in connection with their claims for payment from

the government.  Relators fail to plead this claim with the particularity required by

Rule 9(b).

2.   <u>Underlying DBRA Violations</u>

"The Davis–Bacon Act requires that government contractors pay the

prevailing wages set by the Secretary of Labor to employees working on

---

[8]      For example, Count 1 incorporates all preceding paragraphs by reference, parrots the language of the FCA, and asserts that "Defendants' false claims included claims based on violations of federal law, including [the DBRA], and/or based on false certifications of compliance with federal law, including [the DBRA]."  (<u>See</u> Compl. ¶¶ 41-43).  Count 2 does not reference a specific FCA subsection and asserts that "Defendants fraudulently certified its payrolls to the Government and/or failed to provide certifications at all."  (Compl. ¶ 47).  Despite Relators' shallow attempt to explain their allegations in their Response, they still fail to state clearly how their allegations support a Presentment Claim against each Defendant.  (<u>See</u> [29] at 2, 7, 9-12).

government projects." U.S. ex rel. Wall v. Circle C Const., L.L.C., 697 F.3d 345, 354 (6th Cir. 2012); see 40 U.S.C. § 3142; 29 C.F.R. § 5.5(a)(1). If a contractor fails to pay the prevailing wages, the government "may terminate the contractor's right to proceed with the work." 40 U.S.C. § 3143. "[E]ach contractor and subcontractor each week must furnish a statement on the wages paid each employee during the prior week." 40 U.S.C. § 3145; see 29 C.F.R. § 5.5(a)(3)(ii). "The prime contractor is responsible for the submission of copies of payrolls by all subcontractors." 29 C.F.R. § 5.5(a)(3)(ii). "Each payroll submitted shall be accompanied by a 'Statement of Compliance,' signed by the contractor or subcontractor . . . and shall certify" that the payroll is "correct and complete" and that each worker was paid at prevailing rates. 29 C.F.R. § 5.5(a)(3)(ii)(B). Defendants were required, under the Contract, to comply with these provisions of the DBRA. (Compl. ¶¶ 17-23).

The Complaint fails to allege, with the requisite particularity, that Defendants violated the DBRA. See Keeler, 568 F. App'x at 793 ("Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the circumstances constituting fraud or mistake that must be pled with particularity pursuant to Rule 9(b)." (quoting United States ex. rel. Karvelas v. Melrose–Wakefield Hosp., 360 F.3d 220, 232 (1st Cir. 2004) (internal

18

quotation marks omitted))).

The Complaint does not identify any employees involved in the alleged DBRA violations, with one exception,[9] or the time and place that they occurred. See Clausen, 290 F.3d at 1310 (noting that FCA relators must plead facts as to the "time" and "place" of any fraudulent practices and "who engaged in them"); U.S. ex rel. Butler v. Magellan Health Servs., Inc., 74 F. Supp. 2d 1201, 1216 (M.D. Fla. 1999) (dismissing an FCA claim, partly because "Plaintiff does not provide any specific names of staff involved in the fraud").  The Complaint alleges that Borja was underpaid by Saucedos after working "for a total of two weeks during February and March of 2014," but fails to narrow the dates further. Relators also allege, on only information and belief, that Defendants—without distinguishing their roles or actions—had a "scheme" to underpay workers other than Borja.  See Hill v. Morehouse Med. Associates, Inc., No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (noting that, in FCA cases, "pleadings generally cannot be based on information and belief" (quoting Clausen, 290 F.3d at 1130 (internal quotation marks omitted))).

---

[9]     The Complaint states that Saucedos' owner, Oscar Saucedos, told Borja that "he would not receive any pay" for his second week of work.  (Compl. ¶ 31). Relators do not allege the time or place of this statement or whether it reflected a decision made by Mr. Saucedos or another staff member.

The Complaint also does not elaborate on the content of the payroll certifications, the dates they were submitted or due, or who prepared and submitted them.  See United States ex rel., United Union of Roofers v. City of Chicago, No. 12-cv-7299, 2014 WL 6306582, at *3 (N.D. Ill. Nov. 12, 2014) (finding that relators failed to plead DBRA and FCA violations with particularity because they relied on "information and belief" and did not identify "any individual who prepared or presented the Davis–Bacon certifications to the DOL, when the certifications were sent, or what information the certifications contained").[10] Relators do not allege any specific misrepresentations.[11]

Relators' general allegations fall short of Rule 9(b)'s stringent pleading requirements.  Cf. Rutledge v. Aveda, No. 2:14-cv-145, 2015 WL 2238786, at *8 (N.D. Ala. May 12, 2015) ("[Relator] does not allege any specific violations of any specific statutory or regulatory provision with the particularity Rule 9(b) requires. As a result, she fails to allege sufficient facts upon which Defendants could be found ineligible to make claims to the government and, thereby, turn any claim that may have been presented into a false or fraudulent one.").

---

[10]    The submitting person's identity is material, including because the certification may be signed by the contractor or the subcontractor.
[11]    Relators' theory appears to be that Defendants must have submitted claims, which must have been paid based on Defendants' fraudulent representations.

3.     Materiality of DBRA Violations

Even if Relators had adequately pled DBRA violations, the Complaint fails

to show that Defendants' compliance with the DBRA was material to the

government's decision to pay their claims.  The misrepresentation that renders a

claim false "must be material to the other party's course of action."  Universal

Health, 136 S. Ct. at 2001.  The materiality requirement is both "rigorous" and

"demanding," and must be pled with particularity.  Universal Health

Servs., Inc. v. United States, 136 S. Ct. at 1996, 2003, 2004 n.6.  "[S]tatutory,

regulatory, and contractual requirements are not automatically material, even if

they are labeled conditions of payment."  Id. at 2001.  "Nor is it sufficient for a

finding of materiality that the Government would have the option to decline to pay

if it knew of the defendant's noncompliance.  Materiality, in addition, cannot be

found where noncompliance is minor or insubstantial."  Id. at 2003.

The Complaint alleges that Defendants "were required to comply with all

provisions of the DBRA as a term of [the Contract]" and that payment at prevailing

wages was "included as a condition of the contract."  (Compl. ¶¶ 17, 19).  These

allegations are insufficient under Universal Health, and Relators do not allege

other facts establishing materiality.  Relators have not shown that Defendants

21

misrepresented matters "so central" to the Contract that the government "would not have paid [Defendants'] claims had it known of these violations."  Id. at 2004.

        4.    <u>Presentment of Claims</u>

Even if Relators had adequately pled DBRA violations and materiality, their Presentment Claim is required to be dismissed for failure to allege "that a specific fraudulent claim was in fact submitted to the government."  <u>Corsello</u>, 428 F.3d at 1014.  "The presentment requirement calls on relators not only to describe details about how the schemes operated (however well that might be pleaded), but to cite specific occurrences of actual *fraud*."  <u>Keeler</u>, 568 F. App'x at 797; <u>see id.</u> ("Whether submission of the claim is sufficiently established is a different question than whether the scheme has been sufficiently pleaded.").  "[T]he relator must allege the actual presentment of a claim with particularity, meaning particular facts about the who, what, where, when, and how of fraudulent submissions to the government."  <u>Urquilla-Diaz v. Kaplan Univ.</u>, 780 F.3d 1039, 1052 (11th Cir. 2015) (quoting <u>Hopper v. Solvay Pharm., Inc.</u>, 588 F.3d 1318, 1327 (11th Cir. 2009) and <u>Corsello</u>, 428 F.3d at 1014) (internal citation and quotation marks omitted).  This generally requires a relator to provide detailed billing information:

> Details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, and

the length of time between the alleged fraudulent practices and the submission of claims based on those practices.

Keeler, 568 F. App'x 783, 797 (11th Cir. 2014) (quoting United States ex rel. Karvelas v. Melrose–Wakefield Hosp., 360 F.3d 220, 232-33 (1st Cir. 2004) (internal quotation marks omitted)); see Clausen, 290 F.3d at 1312 ("No amounts of charges were identified.  No actual dates were alleged.  No policies about billing or even second-hand information about billing practices were described. . . .  No copy of a single bill or payment was provided."); see also U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1358 (11th Cir. 2006) (same); United States ex rel. Jallali v. Sun Healthcare Grp., No. 12-cv-61011, 2015 WL 10687577, at *5 (S.D. Fla. Sept. 17, 2015), aff'd sub nom. Jallali v. Sun Healthcare Group et al., No. 15-14231, 2016 WL 3564248 (11th Cir. July 1, 2016).

"[T]he Eleventh Circuit has routinely upheld the dismissal of complaints with detailed allegations of fraudulent schemes that failed to allege with particularity the actual submission of false claims to the Government."  Cade, 2011 WL 2837648, at *4.  In United States ex rel. Atkins v. McInteer, the plaintiff "described in detail . . . an elaborate scheme for defrauding the government by submitting false claims," and cited "particular patients, dates and corresponding medical records for services that . . . were not eligible for government reimbursement."  470 F.3d 1350, 1359 (11th Cir. 2006).  Atkins upheld dismissal

23

of the complaint, because plaintiff "fail[ed] to provide the next link in the FCA

liability chain:  showing that the defendants *actually submitted* reimbursement

claims for the services he describes."  Id.  The complaint "summarily conclude[d]

that the defendants submitted false claims to the government for reimbursement,"

and plaintiff "[did] not profess to have firsthand knowledge of the defendants'

submission of false claims."  Id.  He did not work in the billing and department,

and his allegations were based only on "rumors from staff" and records showing

"shoddy medical and business practices."  Id.

Clausen involved a series of schemes by a lab testing company to defraud

Medicare and Medicaid by performing unnecessary tests.  290 F.3d 1301.  The

plaintiff attached to the complaint patient lists, patients' lab test results, and

standing orders to perform unnecessary tests.  The Clausen court upheld dismissal

of the complaint because "nowhere in the blur of facts and documents assembled

by Clausen regarding six alleged testing schemes can one find any allegation,

stated with particularity, of a false claim actually being submitted to the

Government."  Id. at 1312.  The complaint merely "set the stage for the

consummation of this alleged nefarious plot," but "[did] not adequately allege

when—or even if—the schemes were brought to fruition."  Id.  Plaintiff did not

provide "any billing information to support his allegation that actual false claims

were submitted for payment," <u>id.</u> at 1306, and the court "made plain its position

that to plead a presentment claim, the minimum indicia of reliability required to

satisfy the particularity standard are the specific contents of actually submitted

claims, such as billing numbers, dates, and amounts," <u>Keeler</u>, 568 F. App'x at 797

(quoting <u>United States ex rel. Grubbs v. Kanneganti</u>, 565 F.3d 180, 186 (5th Cir.

2009)) (internal quotation marks omitted).  "[T]he 'stringent requirements of

<u>Clausen</u>' and its progeny remain the law in the Eleventh Circuit."  <u>Jallali</u>, 2015 WL

10687577, at *5 (quoting <u>Keeler</u>, 568 F. App'x at 797 n.19).

As in <u>Clausen</u> and <u>Atkins</u>, even if Relators properly alleged a scheme to

underpay workers and otherwise violate the DBRA—which they do not—Relators

fail to allege adequately that this scheme resulted in the presentment of a claim.

Relators fail to allege with particularity the "*sine qua non* of a False Claims Act

violation," <u>Corsello</u>, 428 F.3d at 1012, namely, that Defendants presented to the

government "any request . . . for money or property."  31 U.S.C. § 3729(b)(2).

Relators do not allege "details concerning the dates of the claims, the content of the

forms or bills submitted, their identification numbers, the amount of money

charged to the government, the particular goods or services for which the

government was billed, the individuals involved in the billing, and the length of

time between the alleged fraudulent practices and the submission of claims based

25

on those practices."  Keeler, 568 F. App'x at 797 (quoting United States ex rel.

Karvelas v. Melrose–Wakefield Hosp., 360 F.3d 220, 232-33 (1st Cir. 2004)

(internal quotation marks omitted).[12]

Under limited circumstances, courts have permitted FCA claims to proceed

without detailed billing allegations where the plaintiff presents sufficient "indicia

of reliability that a false claim was actually submitted."  U.S. ex rel.

Mastej v. Health Mgmt. Associates, Inc., 591 F. App'x 693, 704 (11th Cir. 2014),

cert. denied, 135 S. Ct. (2015).  This method of satisfying Rule 9(b) "nevertheless

impose[s] strict requirements on qui tam relators and do[es] not constitute a

'relaxation' of the standards set forth in *Clausen*" and its progeny.  Jallali, 2015

WL 10687577, at *6.  Under this theory:

> [A] relator with direct, first-hand knowledge of the defendants'
> submission of false claims gained through her employment with the
> defendants may have a sufficient basis for asserting that the
> defendants actually submitted false claims.  By contrast, a
> plaintiff-relator without first-hand knowledge of the defendants'
> billing practices is unlikely to have a sufficient basis for such an
> allegation.  Additionally, a corporate outsider likely does not have the
> required access to learn enough about the defendants' billing
> practices.

---

[12]    This conclusion is true even assuming, as Relators argue, that Defendants'
payroll certifications constitute claims under the FCA.  Relators fail, for the
reasons stated above, to provide adequate details about Defendants' submission of
their payroll certifications.

Mastej, 591 F. App'x at 704 (internal citations omitted); United States ex rel. Childress v. Ocala Heart Inst., Inc., No. 5:13-cv-470, 2015 WL 10742765, at *3 (M.D. Fla. Nov. 23, 2015) ("A relator may also provide sufficient indicia of reliability that false claims were submitted through first-hand knowledge of such submission."); Jallali, 2015 WL 10687577, at *6 ("Without direct evidence of claims submitted to the government, a relator could, nevertheless, survive a 9(b) challenge by showing that she held a position and performed a work function that allows her to allege—again, with specificity and from personal knowledge—that false claims were submitted."); United States v. Space Coast Med. Associates, L.L.P., 94 F. Supp. 3d 1250, 1257 (M.D. Fla. 2015) ("Including all details about bills may not be necessary under certain circumstances.  If the relators have specialized knowledge about the alleged fraudulent billing practices, there may be sufficient indicia of reliability to allow relators to avoid pleading specific information about particular bills." (internal citation omitted)).

In Hill, the court held that the plaintiff's assertion that fraudulent claims were submitted had the necessary "indicia of reliability" because the plaintiff "was an employee within the billing and coding department," "worked in the very department where she alleged the fraudulent billing schemes occurred," "was privy to [the defendant's] files, computer systems, and internal billing practices that

27

[were] vital to her legal theory," and "witnessed firsthand the alleged fraudulent submissions."  Hill, 2003 WL 22019936, at *4-5.[13]

In Mitchell v. Beverly Enterprises, Inc., 248 F. App'x 73 (11th Cir.2007), plaintiff alleged that defendant submitted claims to medicare for services that were never rendered, for more reimbursement than that to which it was entitled, and for services that were not medically necessary.  Id. at 75.  Plaintiff "observed and participated in a billing process," and alleged that "therapists would complete billing log forms, take the forms to the administrator, and then have that information entered and sent directly to Medicare without any edits from an outside source or other management official."  Id.  The court affirmed dismissal of plaintiff's claims because he "provided specific facts only about the therapists' billing logs, not the actual claims presented to Medicare."  Id.  Although he "belie[ved]" claims were submitted, he did not "alleg[e] specific facts as to who submitted the bills to Medicare, how they were submitted, or when they were submitted."  Id.; see Cade, 2011 WL 2837648, at *8 ("Although [relator] relies on her 'observations' as an assistant office manager, her allegations that Defendants

---

[13]  "An unpublished opinion, *Hill* is not binding precedent.  Even if *Hill* were a published opinion, the prior panel rule would dictate that *Clausen* supercedes *Hill* to the extent that *Hill* is inconsistent with *Clausen*."  Atkins, 470 F.3d at 1358 n.15 (internal citation omitted).

actually submitted false claims are general and conclusory. When it comes to the actual submission of claims, . . . the person or persons actually submitting the claim remain a mystery. She cites 'discussions with other individuals involved in the billing process,' but . . . she does not identify with whom she spoke or otherwise provide details that would support the allegations.").

These cases set a high bar for FCA claims that lack detailed billing information, and Relators' Complaint falls well short. Plaintiff-Relator Southeastern Carpenters Regional Council ("SCRC") is a fraternal beneficiary society and Plaintiff-Relator Borja worked for two (2) weeks as a carpenter for Saucedos. Neither worked for SoCo directly, or in the billing department of any Defendant. Although Relators claim they have "direct and personal knowledge" that ACCC workers were underpaid, the Complaint does not allege that Relators had, or even spoke to someone who had, "direct, first-hand knowledge" of SoCo's claims for payment. (Compl. ¶ 39); cf. Walker, 433 F.3d 1349, 1360 (11th Cir. 2005) (finding that plaintiff's allegations were "sufficient to explain why [she] believed" the claims had been submitted to Medicare, because she did not have a Medicare identification number—which was necessary to truthfully bill her services—and because a specifically-identified office administrator told her, in detail, that defendant always submitted fraudulent claims of the sort plaintiff

alleged).[14]  There are no allegations in the Complaint describing Defendants' claim

submission process or establishing Relators' knowledge of that process.  Courts

"decline to make inferences about the submission of fraudulent claims" because

the submissions "must be pleaded with particularity and not inferred from the

circumstances."  Corsello, 428 F.3d at 1013.  Relators fail to plead with

particularity that Defendants submitted fraudulent claims.[15]

> 5.   Scienter

Even if Relators had shown that Defendants submitted materially false

claims, Relators do not plead that Defendants knew their claims were false.  Under

the FCA, a person acts "knowingly" if he has "actual knowledge" or acts with

"deliberate ignorance" or "reckless disregard."  31 U.S.C. § 3729(b)(1)(A).

Reckless disregard is "an extension of gross negligence or an extreme version of

---

[14]    In Walker, the defendant also admitted "that it submitted HCFA 1500 forms
to Blue Cross Blue Shield requesting Medicare reimbursement" and "concede[d]
that the submission of the HCFA 1500 forms constitutes the presentation of claims
for purposes of the False Claims Act."  433 F.3d at 1354.  "[T]o the extent that
Walker conflicts with the specificity requirements of Clausen, [the]
prior-panel-precedent rule requires [courts] to follow Clausen."  Sanchez, 596 F.3d
at 1303 n.4 (11th Cir. 2010).

[15]    The Complaint is particularly short on facts showing that Saucedos
submitted or caused to be submitted a false claim.  Even accepting Relators'
argument that payroll certifications constitute claims, the Complaint specifically
pleads that Saucedos did not submit any payroll certifications to the government
and does not allege with particularity that Saucedos caused other Defendants to
submit the certifications.  (Compl. ¶¶ 29, 36).

ordinary negligence."  Urquilla-Diaz, 780 F.3d at 1058 (citations and internal

quotation marks omitted); see United States ex rel. Burlbaw v. Orenduff, 548 F.3d

931, 945 n. 12 (10th Cir. 2008) ("[A]n aggravated form of gross negligence (i.e.,

reckless disregard) will satisfy the scienter requirement for an FCA violation.").

 Although specific intent to defraud is not required, 31 U.S.C.

§ 3729(b)(1)(B), and knowledge need not be pled with particularity, Fed. R. Civ.

P. 9(b), the scienter requirement is "rigorous," Universal Health, 136 S. Ct.

at 2002.  It is not intended to "punish[] honest mistakes or incorrect claims

submitted through mere negligence" or to impose "a burdensome obligation on

government contractors rather than a limited duty to inquire."  Urquilla-Diaz , 780

F.3d at 1058 (quoting United States v. Sci. Applications Int'l Corp., 626 F.3d

1257, 1274 (D.C. Cir. 2010)) (internal quotation marks omitted).  It is intended to

"capture[] the 'ostrich' type situation where an individual has 'buried his head in

the sand' and failed to make simple inquiries which would alert him that false

claims are being submitted."  Id. (quoting S. Rep. 99–345, at 21, reprinted in 1986

U.S.C.C.A.N. 5266, 5286) (internal quotation marks omitted).

 Without any elaboration or differentiation among Defendants, Relators

conclusorily assert that "Defendants Fulton County, SoCo, and Custom Interiors

made no efforts to ensure that DBRA requirements were being complied with by

Saucedos as required by federal law." (Compl. ¶ 37). This is insufficient to meet the "rigorous" requirement to plead scienter. Universal Health, 136 S. Ct. at 2002. The Complaint does not allege that SoCo or Fulton County knew Custom Interiors hired Saucedos, or that other Defendants knew Saucedos hired and underpaid Borja or other workers. That Defendants "should have done [their] job better," or were negligent, does not establish that they "certified [their] compliance with the [DBRA] with reckless disregard for the truth." Urquilla-Diaz, 780 F.3d at 1061. Nothing in the Complaint shows that any Defendant knew their conduct violated the DBRA and rendered their claims false. Even assuming that Defendants inaccurately certified their compliance with the DBRA, "[k]nowledge is not shown by simply saying  . . . that Defendants are saying something that is not true." Rutledge, 2015 WL 2238786, at *10.[16]

---

[16]    Except for two conclusory assertions that simply parrot language from the FCA, the Complaint does not allege, even in general terms, that Defendants knew their claims were false. (Compl. ¶¶ 1, 42).

C.    Relators' Make-Or-Use Claim[17]

To state a Make-or-Use Claim, "a plaintiff must show that (1) the defendant made a false record or statement for the purpose of getting a false claim paid or approved by the government; and (2) the defendant's false record or statement caused the government to actually pay a false claim, either to the defendant itself, or to a third party." Urquilla-Diaz, 780 F.3d at 1052 (quoting Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1327 (11th Cir. 2009)) (internal quotation marks omitted).  Where, as here, the relators invoke a false certification theory, they must show "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." Id. (quoting United States ex rel. Hendow v. Univ. of Phx., 461 F.3d 1166, 1174 (9th Cir. 2006)) (internal quotation marks omitted). [18]  "[T]he relevant

---

[17]    Without explaining which facts support which cause of action, Relators lump their Make-or-Use Claim in with their Presentment Claim in Count 1. Relators also include their Reverse False Claim in Count 1.  This is bad pleading practice and violates the Federal Rules of Civil Procedure. Creighton, 2016 WL 2642740, at *2.  It disregards "the principle that separate, discrete causes of action should be plead[ed] in separate counts." Cesnik v. Edgewood Baptist Church, 88 F.3d 902, 905 (11th Cir. 1996).  The Court nonetheless considers whether Relators have stated a claim under 31 U.S.C. § 3729(a)(1)(B).

[18]    The 2009 amendment of 31 U.S.C. § 3729(a)(1)(B) replaced the phrase "to get a false or fraudulent claim paid or approved by the Government" with "material to a false or fraudulent claim."  The Eleventh Circuit has adopted the certification theory of liability for both pre- and post-2009 claims under subsection (1)(B).

certification of compliance must be both a prerequisite to obtaining a government

benefit, and a *sine qua non* of receipt of government funding." Id. (quoting United

States ex rel. Hendow v. Univ. of Phx., 461 F.3d 1166, 1172 (9th Cir. 2006))

(internal quotation marks omitted).[19]  Subsection (1)(B) "does not demand proof

that the defendant presented or caused to be presented a false claim to the

government."  Id. (quoting Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1327

(11th Cir. 2009)) (internal quotation marks omitted).

Relators fail to state a Make-or-Use Claim because, as explained above, they

do not adequately plead (1) that Defendants violated the DBRA, (2) that

Defendants acted with scienter, or (3) that the purported DBRA violations were

material.  The Make-or-Use Claim also fails because Relators offer no

---

Urquilla-Diaz, 780 F.3d at 1045 n.6.  Although the Eleventh Circuit has not
considered whether the elements of a false certification claim under subsection
(1)(B) are different in post-amendment cases, see id., some district courts have
continued to apply the pre-amendment standard, see, e.g., United States ex rel
Phalp v. Lincare Holdings, Inc., 116 F. Supp. 3d 1326, 1344 n.24 (S.D. Fla. 2015).
"The Eleventh Circuit has explicitly avoided answering the question of whether
proof of the government's payment of the allegedly false claim is still a required
element of a 'make-or-use' claim after the 2009 amendment."  Rutledge, 2015 WL
2238786, at *5 n.6; see Mastej, 591 F. App'x at 710.  Some courts continue to state
that a "'make-or-use' claim requires proof that the government paid a false claim."
United States v. Liberty Ambulance Serv., Inc., No. 3:11-cv-587-32, 2016 WL
81355, at *3 n.4 (M.D. Fla. Jan. 7, 2016).

[19]      At least one court has assumed that this requirement survives the 2009
amendment.  See Creighton, 2016 WL 2642740, at *3.

particularized facts showing that Defendants' alleged misrepresentations caused "the government to pay out money or forfeit moneys due." Urquilla-Diaz, 780 F.3d at 1052 (quoting United States ex rel. Hendow v. Univ. of Phx., 461 F.3d 1166, 1174 (9th Cir. 2006)) (internal quotation marks omitted). The most they allege is that "[t]he effect of paying less than the required DBRA wages allowed Defendants to make greater profits on the project." (Compl. ¶ 37). This is not enough.

      D.     <u>Relators' Conspiracy Claim</u>

To state a claim for conspiracy under § 3729(a)(1)(C), plaintiffs must show (1) an agreement between two or more people to violate another subsection of 31 U.S.C. § 3729(a)(1); (2) an overt act in furtherance of the conspiracy by at least one of the alleged conspirators; and (3) the United States suffered damages as a result of the false or fraudulent claim. Corsello, 428 F.3d at 1014; Rutledge, 2015 WL 2238786, at *12 & n.9. FCA conspiracy claims are subject to the stringent pleading requirements of Rule 9(b). Corsello, 428 F.3d at 1014.

Count 3 asserts that Defendants "conspired to defraud the Government by getting false or fraudulent claims allowed or paid" and "conspired to submit claims to the federal government based on violations of [the DBRA] and/or based on false certifications of compliance with [the DBRA]." (Compl. ¶¶ 49-52). "[T]his bare

legal conclusion [is] unsupported by specific allegations of any agreement or overt act" and thus requires dismissal.  Corsello, 428 F.3d at 1014; see Rutledge, 2015 WL 2238786, at *12 ("[Plaintiff] does not allege facts to support the inference [that defendants] are working together under a purposeful agreement to knowingly commit acts prohibited by § 3729(a)(1).  As a result, she has failed to properly allege an FCA conspiracy claim.").  That Relators' Proposed Amended Complaint deletes SoCo and Fulton County from Count 3 reflects the paucity of supporting allegations in the Complaint.[20]

---

[20]     The Complaint also asserts that, in violation of 31 U.S.C. § 3729(a)(1)(G), Defendants knowingly made false statements to avoid an obligation to pay the government.  (Compl. ¶¶ 41-44).  To plead a "reverse false claim" under this provision, "a relator must show that the defendant owed a definite and clear 'obligation to pay money to the United States at the time of the allegedly false statements.'"  United States v. Space Coast Med. Associates, L.L.P., 94 F. Supp. 3d 1250, 1263 (M.D. Fla. 2015) (quoting Matheny, 671 F.3d at 1223).  Nothing in Relator's Complaint supports this claim and Relators' Proposed Amended Complaint omits it entirely.  Relators also claim that Defendants violated 31 U.S.C. § 3801 *et seq.*, which concerns administrative remedies for FCA violations.  The Proposed Amended Complaint omits this allegation, likely because it lacks merit.

E.     Relators' Motion to Amend

SoCo argues, and Relators do not specifically dispute, that it would be futile to allow Relators to file their Proposed Amended Complaint.[21]  The Proposed Amended Complaint includes only modest factual additions and does not cure the deficiencies in the Complaint.

Relators now identify the dates on which Borja worked for Saucedos and name two other Saucedos workers who may have been, but were not clearly, underpaid.  ([30.1] ¶¶ 28, 31).[22]  The Proposed Amended Complaint also asserts that "Custom [Interiors] made false certifications on form WH-347 for [work done in the weeks ending March 1, 2014, and March 8, 2014] when it did not list Relator Borja or any other workers from Saucedos on its submission."  ([30.1] ¶ 36).  It claims that "[i]n September 2014 SCRC began an investigation of Defendants [sic] payment practices at the project and interviewed several workers who worked for Saucedos as carpenters performing drywall work."  ([30.1] ¶ 26).  It alleges that "[f]urther internal documents are in Defendants' exclusive possession and control"

---

[21]     Although Relators's Motion to Amend addresses other grounds on which courts may deny leave to amend, it does not argue the futility issue.  SoCo raised the issue in its Response, to which Relators did not file a reply.

[22]     Relators assert that Juan Borja and Louis Borja, Sr. received $133.33 for work done during the week ending March 1, 2014.  ([30.1] ¶¶ 28, 31).  Because Relators do not say how many hours these individuals worked, it is possible that they were paid at prevailing rates.

and thus that "it is unable to identify all of the individuals where [sic] were underpaid."  ([31.1] ¶ 38).

For the reasons already discussed, the Proposed Amended Complaint does not meet the pleading requirements to assert FCA claims.  It does not identify any Defendant employees involved in the DBRA violations,[23] any individuals who prepared and submitted payroll certifications, or the dates on which Defendants submitted, or were required to submit, their certifications.[24]  It does not add allegations showing that Defendants "knowingly" participated in a fraudulent scheme, and continues to allege, on only information and belief, that Defendants— without distinguishing their roles or actions—had a "scheme" to underpay workers other than Borja.  The Proposed Amended Complaint fails to plead that Defendants knowingly violated the DBRA.

The Proposed Amended Complaint also fails to provide sufficient details about Defendants' submission of claims for payment.  It does not allege the dates of the claims, the amount of money charged to the government, the individuals

---

[23]      This is subject to the exception noted above.  Like the original Complaint, the Proposed Amended Complaint alleges that Saucedos' owner, Oscar Saucedos, told Borja that "he would not receive any pay" for his second week of work. ([30.1] ¶ 32).
[24]      It identifies two (2) work weeks for which Saucedos allegedly submitted false or incomplete certifications, but not the dates on which those certifications were submitted or due.

involved in the billing, the length of time between the DBRA violations and the

claim submissions, details about the content or form of the submissions, or details

about the particular goods or services for which the government was billed.  See

Keeler, 568 F. App'x at 797 (explaining that this detailed billing information is

generally required); Mitchell v. Beverly Enterprises, Inc., 248 F. App'x 73, 75

(11th Cir. 2007) (affirming dismissal of FCA claims, including because plaintiff

failed to "alleg[e] specific facts as to who submitted the [claims], how they were

submitted, or when they were submitted").[25]

Relators also fail to present alternative "indicia of reliability that a false

claim was actually submitted."  Mastej, 591 F. App'x at 704.  Relators did not

interview anyone who works for SoCo, did not interview anyone who works in any

Defendant's billing department, allege only that they interviewed Saucedos

carpenters,[26] fail to describe the details or results of those interviews, do not allege

any specifics about Defendants' submission processes, and do not clearly allege

---

[25]    Although Relators now allege that Custom Interiors twice failed to include
Borja and other Saucedos workers on its WH-347 form, this adds little to Relators'
claims against SoCo or other Defendants.  It also does not compensate for the
absence of other detailed allegations.

[26]    Relators claim that SCRC interviewed Borja but do not identify the names of
any other interviewees.  ([30.1] ¶ 26).

that they are unable to obtain information about Defendants' billing processes.[27]

The complaint does not allege that Relators had, or even spoke to someone who

had, "direct, first-hand knowledge" of Defendants' claims for payment.  Mastej,

591 F. App'x at 704; cf. Sanchez, 596 F.3d at 1302-03 & n.4 (affirming dismissal

of plaintiff's FCA claim because, although she was defendant's "office manager"

and claimed "direct knowledge of the defendants' billing and patient records,"

plaintiff's "vague allegations that she 'found [unspecified] documentation' and

'discovered' or 'learned' that the defendants had submitted false claims" were

insufficient).[28]

---

[27]      "Rule 9(b)'s heightened pleading standard may be applied less
stringently . . . when specific 'factual information about the fraud is peculiarly
within the defendant's knowledge or control."  Hill, 2003 WL 22019936, at *3
(quoting United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue
Cross Blue Shield of Ga., Inc., 755 F.Supp. 1040, 1052 (S.D. Ga. 1990)).  The
Proposed Amended Complaint alleges that, because "internal documents are in
Defendants' exclusive possession and control," Relators are "unable to identify all
of the individuals where [sic] were underpaid."  ([31.1] ¶ 38).  Relators do not
identify any other information they are unable to access, or explain why they
cannot obtain this information from the government or from other sources.
Clausen, 290 F.3d at 1314 n.25 (rejecting Clausen's argument that, because
"evidence of fraud was uniquely held by the defendant," the court should apply a
more lenient pleading standard).  Even if they had, Relators' allegations still would
require, but lack, an indicia of reliability.  Id.; Cade, 2011 WL 2837648, at *5 n.5.

[28]      The Proposed Amended Complaint also adds no new allegations bearing on
the materiality requirement or suggesting that Defendants' alleged
misrepresentations caused "the government to pay out money or forfeit moneys
due."  Urquilla-Diaz, 780 F.3d at 1052 (quoting United States ex rel. Hendow v.

FCA plaintiffs must provide the "who," "what," "where," "when," and "how" of both the underlying improper practices and the fraudulent submissions to the government.  <u>Corsello</u>, 428 F.3d at 1014.  Relators here have done neither.  Their Proposed Amended Complaint falls short of the stringent pleading requirements of Rule 9(b) and their Motion to Amend is required to be denied as futile.

      F.    <u>Non-SoCo Defendants</u>

"A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."  <u>Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc.</u>, 817 F.2d 1533, 1537 (11th Cir. 1987) (quoting <u>Silverton v. Department of the Treasury</u>, 644 F.2d 1341, 1345 (9th Cir.)) (internal quotation marks omitted); <u>see Bonny v. Soc'y of Lloyd's</u>, 3 F.3d 156, 162 (7th Cir. 1993) ("A court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related.").  Although only SoCo moved

_____

<u>Univ. of Phx.</u>, 461 F.3d 1166, 1174 (9th Cir. 2006)) (internal quotation marks omitted).

to dismiss Relators' Complaint and deny Relators' Motion to Amend, the Court may dismiss Relators' FCA claims against the remaining Defendants because those claims are based on the same vague allegations of misconduct.  The Court finds that Relators' claims against Defendants are integrally related and that the reasons for dismissal apply to each Defendant.  Because Relators fail to allege their FCA claims with particularity against any Defendant, the Complaint should be dismissed as to all Defendants.

Although courts generally must provide a plaintiff with notice of its intent to dismiss or an opportunity to respond before dismissing an action *sua sponte*, "[t]here is an exception to [the] general rule against dismissal without notice if the complaint is patently frivolous" or if amendment of the complaint "would be futile."  Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (quoting Byrne v. Nezhat, 261 F.3d 1075, 1127 n. 99 (11th Cir. 2001)); Gardner v. TBO Capital LLC, 986 F. Supp. 2d 1324, 1333 n.5 (N.D. Ga. 2013); Danhi v. Charlotte Cty. Sheriff's Dep't, No. 2:03-cv-628, 2006 WL 2226323, at *4 n.2 (M.D. Fla. Aug. 3, 2006).  SoCo has presented arguments germane to all Defendants, and Relators have had opportunities to defend and amend their Complaint based on those arguments.  For reasons applicable to each Defendant, both the Complaint and the Proposed Amended Complaint fail to state a claim, and amendment would

thus be futile.  Relators do not state an FCA claim against the non-moving Defendants and notice is not required before dismissing this action.[29]

Finally, the Court concludes it is unnecessary to allow Relators the opportunity to file a further amended complaint.  SoCo's Motion to Dismiss notified Relators of their significant pleading failures and, in response, Relators sought leave to file their Proposed Amended Complaint, which also fails to meet the Rule 9(b) pleading requirements.  A further opportunity to amend is not required.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant SoCo Contracting Company, Inc.'s 12(b)(6) Motion to Dismiss Plaintiffs-Relators' Complaint [24] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs-Relators Southeastern Carpenters Regional Council and Luis Alberto Borja, Jr.'s Complaint [1] is **DISMISSED** as to Defendants SoCo Contracting Company, Inc., Fulton County, Georgia, Custom Interiors & Acoustics, LLC, and Saucedos Drywall, LLC.

---

[29]   SoCo's Motion to Dismiss Custom Interiors' Cross-Claim is denied as moot because, on February 8, 2016, Custom Interiors voluntarily dismissed its cross-claim against SoCo.

**IT IS FURTHER ORDERED** that Plaintiffs-Relators Southeastern Carpenters Regional Council and Luis Alberto Borja, Jr.'s Motion for Leave to File First Amended Complaint [30] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant SoCo Contracting Company, Inc.'s12(b)(6) Motion to Dismiss Defendant and Crossclaim Plaintiff Custom Interiors and Acoustics, LLC's Crossclaim [25] is **DENIED AS MOOT**.[30]

**SO ORDERED** this 5th day of August, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[30]    It appears that Defendants Fulton County, Georgia and Custom Interiors & Acoustics, LLC's cross-claims are premised on the success of Relators' claims in the Complaint.  (See [17]; [18]).  Because Relators' Complaint is dismissed, Defendants Fulton County, Georgia and Custom Interiors & Acoustics, LLC are ordered to advise the Court, on or before August 22, 2016, of the status of their cross-claims.